UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK WHITICAR | CIVIL ACTION |
| VERSUS | NO. 19-10355 |
| NEW ORLEANS CITY, ET AL. | SECTION "A" (3) |

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 8)** pursuant to Rules 12(b)(1) and (6). This motion was filed by the Defendant City of New Orleans ("the City") on behalf of itself and the Sixth, Seventh, and Eighth Districts of the New Orleans Police Department ("NOPD"). Plaintiff Mark Whiticar opposes the motion. (Rec. Doc. 12, Plaintiff's Opposition). The motion, submitted for consideration on September 4, 2019, is before the Court on the briefs without oral argument.

### I. BACKGROUND

Whiticar filed this suit *pro se* on May 13, 2019. (Rec. Doc. 1, Plaintiff's Complaint). This complaint stems from an incident where Whiticar's daughter caused him $25,000 worth of property damage by setting his home on fire. (Rec. Doc. 12, p. 3, Plaintiff's Opposition). Before this incident occurred, Whiticar tried to have his daughter arrested multiple times. *Id*. He first contacted the NOPD "to get them to arrest my daughter for abusing my granddaughter and making her attempt suicide 3 times," but the NOPD "didn't follow through or pursue her in any way." *Id*. at 3. Whiticar then reported his daughter a second time to the NOPD after she "unlawfully entered [into] my Son's apartment while he wasn't home and took some of his money." *Id*. Although Whiticar received a police report with an item number this time,

"there was still no warrant for her arrest for destruction of my Son's property and theft of his money." *Id.*

Lastly, things came to a head on the night of July 29, 2018 when Whiticar's neighbors called the police to report that they saw, "[the] plaintiff's daughter and another male individual climbing the fence onto plaintiff's property[.]" *Id.* at 4. An officer eventually arrived on the scene and detained Whiticar's daughter, but she was quickly released. *Id.* Once the officer left the scene, Whiticar's property quickly turned into a "big blaze." *Id.* Subsequently, Whiticar filed his Complaint "charg[ing] the City of New Orleans and [the NOPD] with Negligence in not doing their Duty of arresting my daughter and allowing her to come from New Orleans East, Uptown and Downtown to set my home on Fire." *Id.*

In response to Whiticar filing his Complaint, the City now moves this Court on behalf of himself and the NOPD to dismiss this case pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6).

## II. STANDARD OF REVIEW

### A. *Pro Se* Litigant

Because Whiticar is proceeding *pro se*, the Court must construe his pleadings liberally. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir.1995). However, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).

### B. Rule 12(b) of the Federal Rules of Civil Procedure

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v.*

*United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist. *Id.*

Additionally, FRCP 12(b)(6) permits a court to dismiss a complaint when a plaintiff has failed to state a claim for which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not mere legal conclusions portrayed as facts. *Id.* at 667 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly,* 550 U.S. at 555). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id.* A complaint states a "plausible claim for relief" when the factual allegations contained therein, taken as true, necessarily demonstrate actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id.*; *see also Jacquez v. Procunier*, 801 F.2d 789, 791–92 (5th Cir.1986).

### III.    **DISCUSSION**

Here, the City requests the Court to dismiss Whiticar's claim because he fails to make a cognizable claim against the City and the NOPD. (Rec. Doc. 8, p. 2, Defendant's Motion to Dismiss). More particularly, Whiticar's original Complaint merely alleged that, "I charge the City of New Orleans and [the NOPD] with Negligence in not doing their duty of arresting my

daughter and allowing her to come from New Orleans East, Uptown and Downtown to set my home on fire." (Rec. Doc. 1, p. 5, Plaintiff's Complaint). However, in his Opposition to this Motion to Dismiss, Whiticar attempted to refine his argument by claiming his due process rights were violated because, "the right NOPD violated was protected by clearly established law as its marked patrol vehicles conveys to the public their duty to protect and serve." (Rec. Doc. 1, p. 7, Plaintiff's Opposition). Further, in his Opposition, he claimed that the City and the NOPD violated his equal protection rights because, "[b]ased upon extensive phone calls and incident reports launched by plaintiff, NOPD treated plaintiff differently form others and the denials of equal protection by municipal entity or any other person action under color of state law are actionable under § 1983." *Id.* Ultimately, his arguments are meritless, and the following will show why the NOPD and the City are entitled to dismissal under FRCP 12(b)(1) and (6) for Whiticar's federal claims.

### A. Whiticar's Claims Against the NOPD

FRCP 17(b) provides that the capacity to sue or be sued is determined "by the law of the state where the Court is located." Fed.R.Civ.P. 17(b). Louisiana law therefore determines the ability to sue the NOPD. In order to possess juridical capacity under Louisiana law, an entity must qualify as a "juridical person." *Dugas v. City of Breaux Bridge Police Dep't*, 1999-1320, p. 3 (La. App. 3 Cir. 02/02/00); 757 So. 2d 741, 743. Article 24 of the Louisiana Civil Code provides in pertinent part that "[a] juridical person is an entity to which the law attributes personality." La. Civ. Code art. 24. Under Louisiana law, police departments are not juridical entities capable of suing or being sued. *See* La. R.S. 33:361. Further, courts in this District have consistently found that the NOPD lacks juridical capacity. *See, e.g., Martin v. Davis*, No. 06-1770, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007). Because the NOPD is not capable of being sued, the Court dismisses Whiticar's federal claims against it.

### B. Whiticar's § 1983 Claims Against the City

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity by the Constitution and laws of the United States. 42 U.S.C. § 1983. Municipalities are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Under *Monell*, municipalities can be held liable for constitutional violations which arise from enforcement of the municipality's policies or procedures. *Monell*, 436 U.S. 658. Municipalities cannot, however, be liable under § 1983 for the constitutional torts of their employees under the doctrine of *respondeat superior*. *Id.* at 691.

To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. *Id.*; *see also Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

#### 1. Due Process Constitutional Rights

The "Due Process Clause does not require a State to provide its citizens with particular protective services." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). Therefore, "a State's failure to protect an individual against private violence does not violate the Due Process Clause." *Id.* However, *DeShaney* recognized that "in certain *limited circumstances* the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198 (emphasis added). Such "special relationship" cases arise when the state, "through the affirmative exercise of its powers, acts

to restrain an individual's freedom to act on his own behalf." *See McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002).

Here, the City is not responsible under federal law for its alleged failure to protect Whiticar's property from his daughter's destructive acts. Further, the "special relationship" exception does not apply here because Whiticar was never incarcerated nor was he ever under the City's control. Thus, the Court finds that Whiticar's due process rights were not violated under the facts in this case.

### 2. Equal Protection Constitutional Rights

To state an equal protection claim, a § 1983 plaintiff must allege either that "(a) a state actor intentionally discriminated against [him] because of membership in a protected class[,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (citations and internal quotation marks omitted).

Here, Whiticar's equal protection rights were not violated. In his Opposition, Whiticar only made a conclusory allegation that his equal protection rights were violated by saying that, "[the] NOPD treated plaintiff differently from others and the denials of equal protection by municipal entity or any other person acting under color of state law are actionable under § 1983." (Rec. Doc. 12, p. 7, Plaintiff's Opposition). This type of threadbare allegation is not enough to show that Whiticar's equal protection rights were violated. No facts in his Complaint point to him being a member of a protected class or being treated differently than other similarly situated community members. Thus, the Court finds that Whiticar's equal protection rights were not violated under the facts in this case.

### 3. *Monell* Claim

Under *Monell*, Whiticar must show that the City, a Louisiana municipality, was acting under color of state law at the time of the alleged acts. Further, Whiticar must show (1) the existence of a municipal custom or policy; and (2) a direct causal link between the custom or policy and the alleged violation. *Monell*, 436 U.S. at 694. Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579. A policy is official only "when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Here, Whiticar cannot make a successful *Monell* claim under the facts in this case. For instance, Whiticar argues in his Opposition that the NOPD's duty to "protect and serve" constitutes an official policy under *Monell* by saying, "when joining NOPD, law enforcement officials must take an oath to protect and serve the public in general. Moreover, NOPD's marked patrol vehicles conveys [**sic**] this same message/oath as well, and is also embedded into a phrase or clause of the City's contract/policy." (Rec. Doc. 12, p. 9, Plaintiff's Opposition). Whiticar then concludes by saying, "the official policy promulgated by the municipality's policymaker was the actual cause of the constitutional injury based upon the breach (negligence) in failing to comply with its contract." *Id.*

Whiticar's argument is predicated on a mischaracterization of the legal principles promulgated in *Monell*. More specifically, *Monell* requires that the constitutional violation *be a result of a municipal's official policy*, rather than the constitutional violation resulting from a municipality *violating its own official policy*. *See Piotrowski*, 237 F.3d at 579 (5th Cir. 2001)

("Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted *pursuant* to official custom or policy.") (emphasis added). In other words, Whiticar alleges that his constitutional rights were violated because the NOPD failed to follow its own policy. However, this is merely a state law negligence claim instead of a §1983 *Monell* claim.

Therefore, the Court finds that Whiticar's constitutional rights were not violated under the facts of this case, and the Court dismisses Whiticar's federal claims against the City and the NOPD under FRCP 12(b)(6).

### IV. **WHITICAR'S STATE LAW CLAIMS**

When all claims which conferred federal subject matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *see Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004). Here, to the extent that Whiticar's Complaint makes any state law claims, the Court declines jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3).

### V. **AMENDING WHITICAR'S COMPLAINT**

"Generally, . . . a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). However, granting leave to amend is not required when the plaintiff has already pleaded his "best case." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.1998). Here, it would be futile to afford Whiticar an opportunity to amend his Complaint because there is simply no basis for a § 1983 claim under the facts of this case. In other words, Whiticar pleaded his "best case" here.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 8)** filed by the City of New Orleans on behalf of itself and the Sixth, Seventh, and Eighth Districts of the New Orleans Police Department is **GRANTED** as to all federal claims. All federal claims asserted in this action are dismissed with prejudice. Further, the court declines to exercise supplemental jurisdiction over any state law claims Whiticar may have. Those claims are dismissed without prejudice.

October 7, 2019

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE